THE STATE *vs.* EDWARD ASCHER.

Hartford District, October T., 1886. PARK, C. J., CARPENTER, PARDEE, LOOMIS and GRANGER, Js.

The act of 1882 (Session Laws of 1882, ch. 107, part 6, sec. 1,) forbids all persons, without a license therefor, to sell intoxicating liquors " by sample, or by soliciting or procuring orders." Held that. a contract for a sale, made in this state by a travelling agent of a firm in another state, of liquors to be delivered in such other state, is a violation of the statute.

[Argued October 5th—decided November 23d, 1886.]

COMPLAINT for selling intoxicating liquors; brought to a justice of the peace, and, by appeal of the defendant, to the Superior Court in Tolland County, and tried to the jury in that court, on the plea of " not guilty," before *Beardsley, J.*

The prosecution was brought under the act of 1882, which provides that " any person who, without a license therefor, shall, by sample, by soliciting or procuring orders or otherwise, sell any spirituous or intoxicating liquors, * * * shall be fined for the first offense not more than fifty dollars," &c. The complaint charged a sale of intoxicating liquors by the defendant, " by sample, and by soliciting and procuring orders," to one Frederick Einsidel, without having a license therefor.

On the trial of the case the state offered evidence to prove that in November, 1885, the accused went to Rockville, in the town of Vernon, and there, as agent of Swartz

Bros., a wholesale liquor firm in New York city, solicited Einsidel to become the purchaser of intoxicating liquors of Swartz Bros.; that by reason of such solicitation Einsidel gave the accused an order for the purchase of such liquors, and the accused forwarded the order to Swartz Bros., in New York city, and that they afterwards, pursuant to the order, delivered the liquors into the possession of Einsidel.

The accused, at the time, was and still is a citizen of the state of New York, and a resident of New York city, and he claimed and testified in his own behalf that at the time he was in the employ of Swartz Bros. upon a salary, as their agent to solicit orders for the sale of intoxicating liquors, which orders were to be forwarded by him to them in New York for their approval, and if approved, to be there filled by them; and that as such agent he called on Einsidel, at Rockville, and solicited of him an order on Swartz Bros. for the intoxicating liquors in question, to be by them delivered to Einsidel, by delivering them to a common carrier in New York, directed to Einsidel at Rockville, to be transported from New York at the risk and expense of Einsidel; that, by reason of the solicitation Einsidel then gave the accused such an order for the liquors, and the accused took it and forwarded it to Swartz Bros. in New York city, and they approved it and delivered the liquors so ordered to Einsidel, by delivering them to a common carrier in New York city, directed to Einsidel at Rockville; that Einsidel paid the freight on the liquors from New York to Rockville, and in fact received the liquors, and paid Swartz Bros. therefor. Neither the accused nor Swartz Bros. were licensed to sell liquors in any town in this state.

The counsel for the accused requested the court in writing to charge the jury as follows:—" The statute under which the accused is charged prohibits the sale of intoxicating liquors by sample, by soliciting or procuring orders therefor or otherwise, without a license. To constitute a sale of personal property, especially under a penal statute, there must be a transfer of title for a certain consideration. Orders for goods may be received, but until they are trans-

ferred and set apart for the purchaser, the sale is incomplete. An agreement to sell is only executory until the contract is completed by delivery. When, as in the present case, the act of selling without license constitutes the offense, it must appear affirmatively, not only that a sale in the proper sense of the term was actually made, but it must be located within this state. Although sales were effected through the agency of the accused, yet if they are not proved to have been made in this state, he cannot be convicted. The place of sale is the point at which goods ordered or purchased are set apart and delivered to the purchaser, or to a common carrier, who, for the purposes of delivery, represents him. And if in this case the jury shall find that the accused, as an agent for his employers in New York, merely solicited from the purchaser an order for liquors, and forwarded it to his employers in New York, and thereupon they filled it, and delivered the goods to a common carrier, directed to the purchaser at Vernon in this state, according to the order, the sale was in New York. And if the accused, as such agent, had authority merely to receive and transmit to his principals in New York orders for liquors, to be sent by common carriers to purchasers in this state, his employers completing the contract by delivering them to common carriers in New York, and the purchaser agreeing to pay the freight, this would not constitute a sale in Connecticut. The only agreement to sell, or act of sale, would be in New York."

The court did not so charge the jury, but charged them as follows :—" There is no material dispute, as I understand it, between the plaintiff and the accused in regard to the facts. It is agreed, indeed testified to by the accused, that he went to Vernon and solicited, as agent for Swartz Bros. of New York city, (being paid a salary by them for his services,) Einsidel to become a purchaser from Swartz Bros. of certain spirituous liquors ; that, upon such solicitation, Einsidel gave an order to the accused for certain spirituous liquors, to be furnished by Swartz Bros. ; that that order was transmitted to their house by the accused, and, in pur-

suance of the order, the goods were forwarded, and went into the possession of Einsidel. These are the agreed facts in the case; the only question is a question of law as to their legal effect. If, acting as agent for Swartz Bros., living and having their place of business in New York city, the accused came to Rockville and solicited the person named in this complaint to purchase intoxicating liquors from them, and as such agent took his order upon Swartz Bros., given upon such solicitation, and the liquors were afterwards delivered by Swartz Bros., in pursuance of the order so obtained, the defendant is liable, and that although such delivery took place in New York."

The jury returned a verdict of guilty, and the defendant appealed to this court on the ground of error in the charge and in the refusal to charge as requested.

*D. Marcy* and *J. G. Calhoun*, for the appellant.

The offense of which the defendant was convicted was not the soliciting of an order for the sale of liquors, but an actual sale upon an order obtained by such solicitation. The law having made the sale the offense, the well-settled law as to what constitutes a sale of personal property was applicable and decisive. The request of the defendant for instructions to the jury presented this law, and the court erred in refusing to charge in accordance with the request. The law of sales as thus presented has been held to be applicable to a sale of liquors of the exact kind found in this case, and it was held that the sale was not complete until consummated by delivery. *Finch* v. *Mansfield*, 97 Mass., 89; *Garbracht* v. *The Commonwealth*, 96 Penn. St., 449. The same principle is applied by the very statute in question in the provision that the delivery by the vendor or his agent within the limits of a town of any intoxicating liquors shall be deemed a sale of such liquors within such town, although the contract for the sale of such liquors be made outside the limits of such town." The legislature here makes the delivery the sale and not the contract for the sale. It is a settled rule that penal laws are to be

strictly construed. The legislature passed the act knowing of this rule, and that in using the word "sell" it was using a word familiar to the common law and of a well-established meaning.

*B. H. Bill*, State's Attorney, for the State.

CARPENTER, J. This is a prosecution for selling spirituous liquor contrary to law. The facts are concisely stated in the charge to the jury:—"It is agreed, indeed testified to by the accused, that he went to Vernon and solicited, as agent for Swartz Bros. of New York city, (being paid a salary by them for his services), Einsidel to become a purchaser from Swartz Bros. of certain spirituous liquors; that upon such solicitation, Einsidel gave an order to the accused for certain spirituous liquors, to be furnished by Swartz Bros.; that that order was transmitted to their house by the accused, and, in pursuance of the order, the goods were forwarded and went into the possession of Einsidel. These are the agreed facts in the case. The only question is a question of law as to their legal effect. If, acting as agent for Swartz Bros., living and having their place of business in New York city, the accused came to Rockville and solicited the person named in this complaint to purchase intoxicating liquors from them, and as such agent took his order upon Swartz Bros., given by reason of such solicitation, and the liquors were afterwards delivered by Swartz Bros., in pursuance of the order so obtained, the defendant is liable, and that although such delivery took place in New York."

The defendant was convicted and appealed to this court. His grievance is that he was convicted of an unlawful sale, while, as he contends, he effected no sale within the meaning of the statute in this state. He says that he only solicited and obtained an order in this state, and that the sale was completed by a delivery of the liquors by his employers to the purchaser in the state of New York.

The statute of 1882, part 6, section 1, (Acts of 1882,

p. 185,) provides that "any person who, without a license therefor, shall, by sample, by soliciting or procuring orders, or otherwise, sell any spirituous and intoxicating liquors, shall be fined for the first offense not more than fifty dollars, &c." The same statute, part 4, section 11, provides that "no person shall sell any spirituous and intoxicating liquors by sample, by soliciting or procuring orders, or otherwise, within this state, without taking out a license therefor in the manner provided in this chapter; but nothing in this act contained shall prohibit any dealer in spirituous and intoxicating liquors, duly licensed under the provisions of this act, from soliciting and procuring orders in any town in this state in which such liquors may be legally sold."

The question is, what did the legislature mean by selling by sample, or by soliciting or procuring orders? A majority of the court think that it intended to prohibit just such a sale as was made in this case. If the statute is to be so construed as to limit its operation to sales completed by delivery in this state, of course a vast majority of sales by soliciting orders will not be embraced in the statute. We think that the legislature, taking notice of the fact that wholesale dealers in New York and elsewhere out of this state generally sell their wares through agents going from place to place soliciting and procuring orders, intended to prohibit such sales. Otherwise the facilities for making such sales are so great, extending to every town and hamlet in the state, that the efficiency of the license law would be materially impaired. Dealers in neighboring states, without license and without restriction, could sell and cause to be delivered in any and all parts of the state liquors to any extent. Hence the legislature was careful to guard against such a result by prohibiting, as it does in the eleventh section, all sales without a license and all sales in a no-license town. It allows a licensee under the act to solicit and procure orders in any town in which such liquors may legally be sold. All others are absolutely prohibited from selling in any way. Licensed dealers therefore are restricted in such sales to license towns, while the construction con-

tended for by the defendant would open every town in the state to the free and unrestricted sale by soliciting orders to all dealers out of the state. Such results could not have been intended by the legislature, and a construction which will lead to such consequences ought to be avoided.

It will be useful to compare the present statute with those previously existing. They were as follows :—" Any person, without a license therefor, who shall sell * * * any intoxicating liquor * * * shall be fined not less than fifty dollars, &c." Revision of 1875, p. 520, sec. 41. " If any person, in violation of this act, by himself, his servant or agent, shall, for himself or for anybody else, directly or indirectly, or on any pretence, or by any device, sell, or, in consideration of the purchase of any other property, give to any other person any spirituous or intoxicating liquor," &c. Revision of 1866, p. 695, sec. 17.

Thus it appears that under those statutes a completed sale was essential. It is at least doubtful whether a person coming into this state and soliciting an order, which order was filled by a delivery of the property out of the state, committed any offense under those acts. There was no technical sale until the property was selected and delivered, either to the purchaser or to some one for him. The delivery being out of the state, the argument that the sale was not completed in this state, and therefore that there was no offense, would seem conclusive. In this state of the law, and in view of the fact that sales were largely and even generally made by procuring orders, the legislature in 1882, for the first time, put into the enacting clause of the statute the words— " by sample, by soliciting or procuring orders." For what purpose ? There can be but one rational answer : to prohibit all sales by soliciting orders except such as the act expressly allows. Licensed dealers are in terms allowed to sell by orders in license towns. They and all others are prohibited from so selling in no-license towns. We ought not to, and we cannot, so construe the statute as to discriminate against our own citizens. To avoid that it is indispensable that foreign and domestic

dealers should be placed upon the same footing. Do foreign dealers desire to do business in this state? Then let them establish their business here and procure a license.

The claim that the legislature intended only such sales as should be consummated by a delivery in this state cannot be allowed. It is a matter of common knowledge that sales effected by drummers are usually, if not always, consummated by a delivery at the vendor's place of business to a common carrier; and while such delivery for all civil purposes completes the sale made by the drummer, vests the title in the purchaser, and gives the seller a right to the purchase money, yet for all police purposes it is competent for the legislature to say that the acts done by the drummer shall of themselves constitute a sale and therefore an offense. And we think the legislature intended so to say, and to make all such acts an offense, whether the delivery was in or out of the state. By doing so the word "sell" is used in the same sense in which it is generally used by business men in relation to this subject matter. In common language a drummer *sells* goods; he *sells* by sample; he *sells* by soliciting and procuring orders; the dealers *sell* by drummers as their agents. Now if the statute does not reach all such cases then it falls short of reaching the evil aimed at, and the intended remedy is a failure.

It will be observed that the question before us is not— what ought to be the law? but—what is it? It may be that the statute will sometimes operate harshly; but such considerations are for the legislature rather than the courts.

There is no error in the judgment complained of.

In this opinion PARDEE and LOOMIS, Js., concurred.

PARK, C. J., (dissenting.)—On the trial of this case the facts were not in dispute. They were substantially as follows:—

The defendant procured an order from one Einsidel of the town of Vernon in this state to be sent to Swartz Brothers

of the city of New York for the sale of spirituous liquors by them in that city to Einsidel, if they should be disposed to fill the order. The order was sent, and Swartz Brothers sold the liquors to Einsidel according to the order. The liquors were sent to Einsidel at Vernon at his expense by Swartz Brothers, and Einsidel paid for them and for their transportation. The defendant had no authority from Swartz Brothers to sell spirituous liquors for them, and he neither made nor attempted to make, with Einsidel, any contract of sale regarding the liquors. He was in the employment of Swartz Brothers to procure and forward orders for the sale of spirituous liquors by them in the city of New York, and all that he did in the matter complained of was in strict accordance with his employment. Neither the defendant nor Swartz Brothers had a license to sell spirituous liquors in any town in this state.

Do these facts constitute a breach of the statute of 1882, which provides that " any person who, without a license therefor, shall, by sample, by soliciting or procuring orders, or otherwise, sell or exchange, or shall offer or expose for sale or exchange, or shall own or keep with intent to sell or exchange, any spirituous or intoxicating liquors," shall be fined, &c. The question then is, did the defendant sell to Einsidel the spirituous liquors in question, when he procured from him the order sent to Swartz Brothers, or when Swartz Brothers afterwards in fact sold the liquors in New York to Einsidel, and forwarded the same to him?

It is conceded by the majority of the court that the act of the defendant did not amount to a sale when the order was procured and sent; but the claim is that the sale was consummated when the sale was made in New York, and the liquors had arrived at Einsidel's place of business in Vernon.

But what kind of a sale was it? All that the defendant did was to procure the order and send it. He had no authority to do anything more. He could make no contract of sale, much less make a sale, of the liquors of Swartz Brothers. What kind of a sale was it? The defendant

must have sold the liquors in question or there would be no violation of the statute ; this is conceded.

It seems to me that the statute itself should put an end to all controversy in regard to the meaning in it of the word "sell." Its language substantially is—"No person shall sell, &c., without a license therefor," that is, without a license for the sale. The statute has in view sales only which persons may be licensed to make. It seems to me this is clear. Now, licenses are provided for sales in fact, and for such sales only, and when the statute declares, "without a license *for the sale that is made*," it means a sale in fact, made by the party, which he might have been licensed to make.

I think therefore, that the act of the defendant in simply procuring the order and sending it to his employers in New York, does not constitute a sale within the meaning of the act, although followed by a sale by Swartz Brothers in New York, and by a forwarding of the liquors to Vernon at the purchaser's expense.

If the defendant had been authorized to make a contract of sale of the liquors in question, and he had made it, or if he had made it without being authorized, and in either case the liquors had been sent and delivered to Einsidel in fulfillment of the contract, then I think it might be said that the defendant had sold the liquors within the meaning of the statute. But I cannot think that if one should say to his neighbor, who was desirous to obtain the best of liquors for his own consumption—"Go to A. B. in New York and purchase your next supply," and even if he should urge him to do so, and the neighbor should go to A. B. in consequence and purchase and bring home his supply of liquors, that the neighbor who made the solicitation would render himself amenable to this statute, on the ground that he had sold the liquors to his neighbor without a license therefor. He would be so liable if the construction is correct which the majority of the court have given to the statute.

But it is said that the eleventh section of the act strongly supports the view taken by the majority of the act in ques-

tion. I am unable to see it. That act is as follows :—" No person shall sell any spirituous and intoxicating liquors, by sample, by soliciting or procuring orders, or otherwise, within this state, without taking out a license therefor in the manner provided in this chapter." If the statute had stopped here, would any one claim that there was anything in its operation against any licensed person? Its prohibition is wholly against unlicensed persons. But the statute goes on to provide as follows :—" But nothing in this act contained shall prohibit any dealer in spirituous and intoxicating liquors duly licensed under the provisions of this act, from soliciting and procuring orders in any town in this state in which such liquors may legally be sold."

Manifestly the object of this last clause was, to make it clear beyond the possibility of a claim to the contrary, that licensed persons were not included in the first clause of the statute. Again, the first clause is a sweeping prohibition of sales, in the manner described, by unlicensed persons everywhere in the state, leaving it to be inferred, to some extent, that licensed persons may make such sales anywhere, as well in no-license towns as in license towns ; and to prevent such inference the last clause may have been inserted, confining their sales by soliciting orders to license towns.

Again, it is said that the construction which the defendant claims should be given to the statute would destroy to a great extent its efficiency, and would involve an unjust discrimination in favor of non-residents of the state. But such considerations as these should be addressed to the legislature, to induce it to enact a further statute on the subject, if the present one does not go far enough; they throw little light upon the present inquiry, what the statute really means. No statute can prevent the buyers of spirituous liquors from going to New York to make their purchases, if they are so disposed, as was the fact in the present case. Suppose Einsidel had taken the order after he had given it to the defendant, and had gone himself to New York, and had there made the purchase in person, and had brought home with him the liquors in question, would the

defendant then have been liable ?  Suppose Swartz Brothers
had been sellers of dry goods, and an order had been given
by Einsidel to the defendant for a quantity of cotton cloth,
with all the incidents of the present case.  The defendant
in procuring and sending the order would have been acting
for Einsidel, as his agent, and the case would have been the
same as though Einsidel had made and sent his own order,
and had directly made the purchase.  Surely it could not be
said that the defendant was the seller of the cloth.

It seems to me that the case of *Garbracht* v. *The Common-
wealth*, 96 Penn. St., 449, is directly in point, and is a strong
authority for the defendant.

I think there is error.

In this opinion GRANGER, J., concurred.